**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
SECURITIES AND EXCHANGE        )
COMM'N,                        )
                               )
        Plaintiff,             )
                               )
     v.                        )   Civil Action No. 05-36 (GK)
                               )
CHARLES JOHNSON, JR., et al.,  )
                               )
        Defendants.            )
_____)

## MEMORANDUM OPINION

Plaintiff Securities and Exchange Commission ("SEC") brings this action against five individual Defendants alleging a fraudulent scheme to materially and improperly inflate the announced and reported revenues of PurchasePro.com, Inc. ("PurchasePro").[1] This matter is before the Court on Defendant Christopher Benyo's Motion for Summary Judgment. Upon consideration of the Motion, Opposition, Reply, Surreply, and the entire record herein, and for the reasons stated below, Defendant's Motion for Summary Judgment [Dkt. No. 82] is **denied**.

### I. BACKGROUND

Defendants in this case are former executive-level employees of PurchasePro, a Nevada corporation, and America Online, Inc.

---

[1] On January 10, 2005, a grand jury returned an indictment in the United States District Court for the Eastern District of Virginia against the same five Defendants as well as one additional defendant. United States v. Benyo, No. 05-12 (E.D. Va.). On February 6, 2007, Defendants Christopher Benyo, Kent Wakeford, and John Tuli were found not guilty of all pending charges in that case.

("AOL"). The SEC alleges that between November 2000 and June 2001, Defendants participated in a scheme to commit securities fraud. The alleged purpose of the scheme was to improperly inflate PurchasePro's reported revenues and to otherwise misrepresent PurchasePro's business activities for the last quarter of 2000 and the first quarter of 2001.

The SEC claims that to accomplish this purpose, Defendants engaged in a series of transactions in which PurchasePro sold software licenses to third-party companies in exchange for PurchasePro's promises to invest in those companies at a later date. Defendants then allegedly reported the income from the license sales in PurchasePro's Form 10-K for 2000, filed with the SEC on April 2, 2001, without disclosing the contingent side agreements. Defendants also allegedly back-dated sale documentation so that revenue would be recognized in the fourth quarter of 2000 and the first quarter of 2001, although that revenue was not actually earned in those quarters. The SEC claims that PurchasePro improperly included those back-dated transactions in revenue information reported in an April 26, 2001 national press release, an April 26, 2001 conference call, and in PurchasePro's Form 10-Q for the first quarter of 2001, which it filed with the SEC on May 29, 2001.

Defendant Christopher Benyo ("Benyo") was PurchasePro's Senior Vice President for Marketing and Network Development during the

relevant period.  He currently resides in Greer, South Carolina. The SEC alleges that Benyo violated four sections of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a et seq. Specifically, the SEC alleges that Benyo aided and abetted PurchasePro's violations of Exchange Act Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5 (Count III); falsified books and records and circumvented internal controls in violation of Exchange Act Section 13(b)(5), 15 U.S.C. § 78m(b)(5), and Rule 13b2-1 (Count IV); misled an accountant or auditor in violation of Exchange Act Rule 13b2-2 (Count VI); and aided and abetted PurchasePro's violations of Exchange Act Sections 13(b)(2)(A) and (B), 15 U.S.C. § 78m(b)(2)(A) and (B), by falsifying books and records (Count IX).

 Specifically, the SEC alleges that Benyo participated in the creation of a fraudulent Statement of Work that purported to reflect a project to be performed by PurchasePro for AOL in the first quarter of 2001.  The Statement of Work was executed after the close of the quarter and was back-dated to mislead investors.

 The SEC alleges that Benyo was involved in concealing the fact that PurchasePro never completed the project documented in the Statement of Work.  Benyo allegedly proposed the creation of an internet hyperlink designed to generate the false appearance, for the benefit of PurchasePro's auditors, that the services described in the Statement of Work had actually been performed. PurchasePro included $3.65 million in revenue from this contract in its April

26, 2001 earnings announcement, but did not include it in the revenue figure reported in the Form 10-Q filed with the SEC on May 29, 2001 because the auditors subsequently became aware of information raising concerns about the authenticity of the contract. The SEC alleges that as a result of his participation in the scheme to inflate PurchasePro's reported revenue, Benyo received a bonus payment of $100,000.

Benyo has moved for Summary Judgment on the ground that venue is not proper in the District of Columbia because the events giving rise to the claims against him occurred only in Nevada.[2]

**II. Defendant's Motion Is Denied Because Venue Is Proper in the District of Columbia Under the Co-Conspirator Venue Theory**

Under the Exchange Act, venue is proper "in the district wherein any act or transaction constituting the violation occurred . . . or in the district wherein the defendant is found or is an inhabitant or transacts business. . . ." 15 U.S.C. § 78aa. It is well-settled that the filing of documents with the SEC has a locus in the District of Columbia and establishes venue here. See SEC v. Savoy Indus., Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978)("[T]he act of filing has a locus in the District of Columbia."); SEC v. Daly,

---

[2] Although Benyo has styled his argument as a summary judgment motion, claims of improper venue should be raised in a motion to dismiss. See Fed. R. Civ. P. 12(b)(3). Consequently, the Court construes this as a Rule 12(b)(3) motion. In ruling on a motion to dismiss based on improper venue, the Court may consider material outside of the pleadings. See Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).

No. 05-55, slip op. at 4 (D.D.C. Feb. 11, 2006) (in aiding and abetting case, "the act of filing documents with the SEC has a locus in the District of Columbia"); <u>SEC v. Ernst & Young</u>, 775 F. Supp. 411, 413 (D.D.C. 1991).

"Without question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum . . . ." <u>Sec. Investor Prot. Corp. v. Vigman</u>, 764 F.2d 1309, 1317 (9th Cir. 1985) (internal citations omitted). Accordingly, in securities fraud cases involving multiple defendants acting in multiple districts, courts apply the co-conspirator theory of venue. <u>See</u> <u>SEC v. Diversified Indus.</u>, 465 F. Supp. 104, 111 (D.D.C. 1979); <u>Hilgeman v. Nat'l Ins. Co. of America</u>, 547 F.2d 298 (5th Cir. 1977); <u>Wyndham Associates v. Bintliff</u>, 398 F.2d 614 (2d Cir. 1968), <u>cert. denied</u>, 393 U.S. 977 (1968); <u>see also</u> 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3824 (3d Ed. 2007).

The co-conspirator venue theory provides that "in multi-defendant and multi-forum securities fraud actions any act committed material to and in furtherance of an alleged fraudulent scheme will satisfy the venue requirement of the Exchange Act as to all defendants wherever the defendants are found." <u>SEC v. Nat'l Student Marketing Corp.</u>, 360 F. Supp. 284, 292 (D.D.C. 1973); <u>see also</u> <u>Diversified Indus.</u>, 465 F. Supp. at 111 ("The co-conspirator

venue theory, in essence, provides: '[A]ny allegation of a securities act violation is sufficient for venue purposes even as to a defendant who did not commit an act within the district if that defendant is in league with a defendant who did act within the district.'")(internal quotation omitted).

The co-conspirator venue theory serves the important purpose of "joining all defendants in one action, thereby avoiding duplicitous litigation and inconsistent results." Vigman, 764 F.2d at 1317, and supports "[t]he strong policy favoring the litigation of related claims in the same forum." Id. at 1318.

To satisfy the venue requirement, a complaint must allege a fraudulent scheme, but is not, as suggested in Benyo's pleadings, required to allege a conspiracy. See, e.g., SEC v. Wallace, 94 F. Supp. 2d 1, 4 n.1 (D.D.C. 2000) (finding venue was proper under co-conspirator theory despite lack of conspiracy allegations, and noting that the case law supports "a broad application of venue where a common scheme of acts or transactions to violate securities acts is alleged"). But see Celsion Corp. v. Stearns Mgmt., No. 00-1214, 2001 WL 55456, *3 (D. Md. Jan. 18, 2001) ("[Plaintiff] does not allege a fraudulent conspiracy among the defendants and cannot avail itself of the co-conspirator' theory").

A plaintiff must show only "one act within the district which represented more than an immaterial part of the allegedly illegal events." Diversified Indus., 465 F. Supp. at 111. The act of a

single defendant in the district is deemed to be the act of all the defendants and will establish venue as to all. See Schreiber v. W.E. Hutton & Co., 382 F. Supp. 297, 299 (D.D.C. 1974) ("[T]he act of one [conspirator] is deemed to be the act of all the co-conspirators and venue is established as to all of them in that district.").

In this case, the SEC claims that Defendants entered into a scheme to "improperly inflate the announced and reported revenues of PurchasePro during the final quarter of 2000 and the first quarter of 2001, for the purpose of, among other things, misleading the investing public and propping up the price of PurchasePro stock." Pl.'s Opp'n at 10. The SEC alleges that Benyo participated in this scheme, which culminated in the filing of PurchasoPro's 10-K and 10-Q, containing fraudulent and misleading financial information, with the SEC in Washington, D.C.[3] Compl. ¶¶ 3, 47-53. Those filings clearly were a material part of the

---

[3] Benyo has also filed a Notice of Supplemental Filing [Dkt. No. 95], which relies on assertions of the United States Department of Justice ("DOJ") in the related criminal case in the Eastern District of Virginia. Benyo highlights the DOJ's assertion in that case that because PurchasePro electronically filed its Form 10-Q with EDGAR, the SEC's online filing system, in the Eastern District of Virginia, venue is proper in that district. Of course, venue may be proper in more than one district. See, e.g., FC Investment Group LC v. Lichtenstein, 441 F. Supp. 2d 3, 11 (D.D.C. 2006) ("Under the amended [venue] statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred.") (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3806 (1994 Supp.)).

alleged overall scheme.[4]  Because Benyo allegedly aided and abetted that scheme, including through manipulation of the Statement of Work, venue for the claims against him is proper in the District of Columbia.  See also Diversified Indus., 465 F. Supp. at 111 (holding that venue lies in the District of Columbia in securities fraud case alleging, inter alia, fraudulent bookkeeping).

Benyo argues that United States v. Crop Growers supports the proposition that "venue over a false books and records charge lies in 'the place where the actual entries were made.'"  Def.'s Mot. at 4 (citing Crop Growers, 954 F. Supp. 335, 353 (D.D.C. 1997)).  Benyo's reliance on Crop Growers is misplaced.  The Court's opinion in that case never addressed the co-conspirator venue theory.[5]

Moreover, Crop Growers was a criminal case and consequently implicated separate constitutional considerations.  Accordingly, the Court emphasized that "[t]he Constitution and the Federal Rules of Criminal Procedure guarantee that a defendant will be tried in

---

[4] The alleged scheme also involved PurchasePro's public announcement of inflated revenues in its April 26, 2001 nationwide press release.  Benyo's alleged proposals regarding the Statement of Work contributed to the inflated revenue reported in that press release.  See Compl. ¶¶ 13, 34-35.  Numerous courts have found venue for alleged Exchange Act violations based upon the defendant's publication of representations in the national press. See, e.g., CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc., 309 F. Supp. 2d 637, 648 (D.N.J. 2004); In re Triton Ltd. Sec. Litig., 70 F. Supp. 2d 678, 687 (E.D. Tex. 1999).

[5] Because of the age of the case, it is impossible to obtain the pleadings in any timely fashion.  It may well be, especially because the issue was never addressed in the opinion, that the Government never raised the argument.

the state and district where the charged offense was allegedly committed." Crop Growers, 954 F. Supp. at 352 (citing U.S. Const. Art. III, § 2, cl. 3; U.S. Const. Amend. VI; Fed. R. Crim. P. 18). Construing the venue provisions of the Exchange Act, the Court cautioned that

> [q]uestions of venue in criminal cases . . . are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it.

Id. at 352. This civil case, in contrast, falls squarely within the case law applying the co-conspirator venue theory.

**III. CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **denied.**

An Order will issue with this opinion.


Date: May 23, 2007                /s/
                                  Gladys Kessler
                                  United States District Judge

**Copies to: attorneys on record via ECF**