UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
SECURITIES AND EXCHANGE         )
COMM'N,                         )
                                )
        Plaintiff,              )
                                )
    v.                          )        Civil Action No. 05-36 (GK)
                                )
CHARLES JOHNSON, JR., et al.,   )
                                )
        Defendants.             )
_____)
```

<u>MEMORANDUM OPINION</u>

Plaintiff Securities and Exchange Commission ("SEC") brings this action against four individual Defendants (John Tuli, Kent Wakeford, Christopher Benyo, and Michael Kennedy, collectively "Defendants"), alleging a fraudulent scheme to materially and improperly inflate the announced and reported revenues of PurchasePro.com, Inc. ("PurchasePro"). This matter is before the Court on Defendants' Joint Motion to Exclude the Testimony of Albert A. Vondra. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendants' Joint Motion to Exclude the Testimony of Albert A. Vondra [Dkt. No. 183] is **granted in part** and **denied in part**.

## I.  BACKGROUND

Defendants in this case are former executive-level employees of PurchasePro, a Nevada corporation, and America Online, Inc. ("AOL"). The SEC alleges that between November 2000 and June 2001, Defendants participated in a scheme to commit securities fraud.

The alleged purpose of the scheme was to improperly inflate PurchasePro's reported revenues and to otherwise misrepresent PurchasePro's business activities for the last quarter of 2000 and the first quarter of 2001.  According to the SEC, to further their scheme, Defendants back-dated sale documentation so that $3.65 million in revenue would be recognized in the fourth quarter of 2000 and the first quarter of 2001, although that revenue was not actually earned in those quarters.[1]   The SEC claims that PurchasePro improperly included those back-dated transactions in revenue information announced in an April 26, 2001 national press release, an April 26, 2001 conference call, and in PurchasePro's Form 10-Q for the first quarter of 2001, filed with the SEC on May 29, 2001.

The SEC has announced its intention to include as part of its case in chief at trial expert opinion testimony from Albert A. Vondra, a twenty-eight year veteran of PriceWaterhouseCoopers, a certified public accountant ("CPA"), a certified fraud examiner ("CFE"), and an attorney admitted to practice in the state of Ohio. The SEC intends to use Vondra's testimony to explain to the jury the concept and importance of revenue recognition, as well as how

---

[1] The sales documentation at the heart of the SEC's case is a document known as the "Statement of Work" ("SOW"), which Defendants contend was created to reflect a portion of auction integration work PurchasePro was performing for AOL during the first quarter of 2001.  Ultimately it was discovered that the SOW had been forged and backdated, a fact which both parties acknowledge.

the relevant Generally Accepted Accounting Principles ("GAAP") which govern the profession and certain auditing standards apply to the facts of this particular case.  Opp. at 4.  In addition, the SEC intends to rely on Vondra's conclusion that recognizing the $3.65 million revenue claim in the first quarter of 2001 was improper under GAAP, and that this amount was material to PurchasePro's financial position.  Id.

Defendants do not contest Vondra's qualifications as an expert; rather, they contend that his opinions are premised on an unreliable methodology, are the product of an unreliable application of that methodology, and fall within the province of the jury.  On October 17, 2007, Defendants jointly filed a motion to exclude Vondra's testimony.

## II.  LEGAL FRAMEWORK

The admissibility of expert testimony is governed by the analysis set forth by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and the Federal Rules of Evidence.  In Daubert, the Supreme Court described the trial judge's gatekeeping function and her responsibility "to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.  As our Court of Appeals has recognized, Daubert lowered the threshold for admissibility of scientific evidence, envisioning a "limited gatekeeper role" for

trial judges.[2]  Ambrosini v. Labarraque, 101 F.3d 129, 134 (D.C. Cir. 1996)(quotations omitted).  In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999), the Supreme Court clarified that the trial judge's gatekeeping function applies not only to proffered expert scientific testimony, but also to "testimony based on 'technical' and 'other specialized' knowledge."  The Court emphasized that in exercising their gatekeeping function, district judges have broad discretionary authority "to determine [the] reliability [of an expert's testimony] in light of the particular facts and circumstances of the particular case."  Id. at 158.

Daubert requires the trial court to undertake a two-prong analysis that centers on evidentiary reliability and relevancy. Ambrosini, 101 F.3d at 133.  The trial court must determine "first whether the expert's testimony is based on 'scientific knowledge'; and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'"  Id. (quoting Daubert, 509 U.S. at 592).

The first prong of the Daubert analysis requires the trial court to assess the methodology employed by the expert as a means

_____

[2]In 2000, Federal Rule of Evidence 702 was amended in response to Daubert and its progeny.  The Rule now provides that an expert witness with "scientific, technical, or other specialized knowledge" may testify in the form of an expert opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

of ensuring evidentiary reliability.   <u>Id.</u>   Although <u>Daubert</u> identified four factors a district court may consider in assessing scientific validity, the Court emphasized that the inquiry is a "flexible one," and that the factors it discussed were not necessarily applicable in every case, dispositive, or exhaustive. <u>Id.</u> (citing <u>Daubert</u>, 509 U.S. at 593-95).   Rather than mandating the mechanical application of a set list of factors, the Court cautioned in <u>Kumho</u> that <u>Daubert</u> factors "do not constitute a 'definitive checklist or test,'" 526 U.S. at 150, and that "whether <u>Daubert</u>'s specific factors are, or are not, a reasonable measure of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."   <u>Id.</u> at 153.   The Court cautioned that in applying the first prong of the <u>Daubert</u> analysis, the trial court must focus "solely on principles and methodology, not on the conclusions they generate."   <u>Daubert</u>, 509 U.S. at 595.

The second prong of the <u>Daubert</u> test concerns relevance or "fit" which, the Supreme Court warned, "is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes."   <u>Id.</u> at 591.   The dispositive question with respect to "fit" or relevance is whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue."   <u>Daubert</u>, 509 U.S. at 591 (quoting Federal Rule of Evidence 702) (quotations omitted).

As our Court of Appeals has explained, a judge is not required to become an expert in the field of the proffered expert in order to assess "fit"; rather, "once an expert has explained his or her methodology, and has withstood . . . evidence suggesting that the methodology is not derived from the scientific method, the expert's testimony, so long as it 'fits' an issue in the case, is admissible under Rule 702 for the trier of fact to weigh." Ambrosini, 101 F.3d at 134.

## III. ANALYSIS

### A.  Vondra Applied Reliable Principles and Methods in Forming his Proffered Opinions

Defendants' argument that Vondra relies upon a subjective methodology lacks merit.  Federal Rule of Evidence 702 provides that to be admissible, expert testimony must be the product of reliable principles and methods.  The methodology employed must be one accepted in the respective field of expertise and, as noted by Defendants, must constitute "more than subjective belief or unsupported speculation."  Mot. at 16 (quoting Ambrosini, 101 F.3d at 133).  "Proposed testimony must be supported by appropriate validation – i.e., 'good grounds' . . . ."  Ambrosini, 101 F.3d at 133.  Vondra's proposed testimony is supported by appropriate validation, and therefore does not fail to satisfy the first prong of the Daubert standard.

> **1.   Vondra Applied Reliable Principles and Methods Comporting with the Industry Standard in Forming his Proffered Opinions**

While Vondra clearly has substantial experience and training in auditing and accounting processes – he is a certified public accountant, certified fraud examiner, and a JD with twenty-eight years of audit experience at a major accounting firm, <u>see</u> Opp. at 2 – his report and supplemental report indicate that he does not base his opinions on experience or training alone.  In reaching his conclusions, Vondra employed both his experience and a methodology routinely relied upon by accounting professionals when conducting an audit and investigating the possibility of accounting fraud.[3]

As Plaintiff notes, Vondra's opinions flow from application of the same Generally Accepted Accounting Principles that America's public companies use every day to record revenue in their books. Opp. at 4.   Vondra also applied the Generally Accepted Auditing Standards ("GAAS"), and in particular the "confirmation process" auditing method, in forming his opinions.   Opp. at 6.   The confirmation process guided Vondra in determining what information

---

[3]In their reply brief, Defendants argue that expert accounting testimony is inherently subjective and therefore presumptively unreliable.  <u>See</u> Reply at 14.  The Court disagrees.  Other courts have accepted expert accounting testimony without employing a heightened standard of admissibility, <u>see, e.g.</u>, <u>Wechsler v. Hunt Health Sys. Ltd.</u>, 381 F.Supp.2d 135 (S.D.N.Y. 2003); <u>see also</u> <u>Kumho</u>, 526 U.S. at 152 (observing that courts are to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

would be relevant to his analysis, Opp. at 7-8, and the industry standards for "Audit Evidence" and "Consideration of Fraud in a Financial Statement Audit" assisted him in analyzing the information with which he was presented.  Opp. at 8.  Vondra's reliance upon GAAP[4] and other industry standards constitutes the type of non-scientific, but admissible, expert methodology envisioned in Kumho.  See Vondra Initial Report at 1-8; see generally Vondra Supplemental Report.  Therefore, Defendants' contention that Vondra's testimony should be excluded because it is not the product of reliable principles and methods must be rejected.[5]

### 2. Vondra Reliably Applied his Methodology to the Facts of the Case

The Court also rejects Defendants' contention that Vondra's testimony should be excluded because he "failed to reliably apply

---

[4]Defendants state that "Vondra's initial report fails to cite a single accounting or auditing standard or interpretation, or discuss GAAP or GAAS, in connection with any other conclusion expressed." Reply at 16.  This statement is incorrect.  See, e.g., Vondra Initial Report at 2, 11, 21.  Regardless, Vondra's supplemental report leaves no doubt that his conclusions are reached through application of generally accepted auditing and accounting standards.

[5]Defendants make much of the fact that although Vondra in his supplemental report claims reliance upon Practice Aid 07-1, he could not have relied upon that Practice Aid in formulating his opinions because it had not yet been published at the time of his original report.  Where, as here, an expert has cited voluminous industry support for the methodology he employed, improperly citing one Practice Aid will not be held to invalidate his methodology in its entirety.  Moreover, the Court has no doubt that able defense counsel will bring this to the jury's attention.

a cognizable methodology to the case." Mot. at 22. Defendants accuse Vondra of "cherry picking" evidence in favor of one party, rather than reliably applying an accepted methodology to all the evidence presented. Id. In its review of precedent and the Federal Rules, the Court has encountered no authority rigidly requiring that an expert review all relevant information in a case in order to have his or her testimony admitted into evidence. Indeed, Federal Rule of Evidence 705 specifically "eliminates the prior practice of requiring an expert to set out, specifically, the facts and data underlying an opinion before allowing the expert to testify." Ambrosini v. Labarraque, 101 F.3d 129, 132 (D.C. Cir. 1996). Failing to review all relevant evidence is not a ground for excluding Vondra's testimony; rather, it provides subject matter for cross-examination. In short, Defendants' arguments "go to the weight of [the expert's] testimony rather than the admissibility." Wechsler v. Hunt Health Sys., 381 F.Supp.2d 135, 144-45.

Nor can Defendants prevail on their argument that Vondra's testimony should be excluded because he relied on the SEC's version of the facts rather than Defendants'.[6] It is for the jury, not the

---

[6]As part of this argument, Defendants contend that Vondra's conclusions are impermissibly premised upon "witness and evidentiary credibility determinations" that, they allege, are better left for the jury. Reply at 3. Although Defendants' criticism is couched in terms of Vondra invading the jury's province by making credibility determinations, in fact, Defendants are attacking the evidence he relied upon in reaching his conclusions. In other words, this is yet another criticism of Vondra for favoring Plaintiff's view of the facts. It is not

Court, to determine whether his opinions are suspect because facts upon which he relied were shown to be inaccurate or unproven.[7] MicroChemical, Inc. V. Lextron, Inc., 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("[w]hen, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony"); Wechsler, 381 F.Supp.2d at 144-45 (rejecting exclusion of an expert based on his purported reliance on "the wrong documents").  Indeed, the Advisory Committee, in its comments to Federal Rule of Evidence 702, has warned that:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts.  The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Defendants' criticism of Vondra's reliance on particular sources, bias embedded in his analysis, or his alleged misconstruction of facts would appear to serve better as fodder for cross-examination than as grounds for a ruling in limine.  As the

grounds for exclusion that he evaluated the credibility of the evidence in reaching his conclusions.  See Reply at 3-4.  Indeed, as his expert testimony involves an assessment of whether fraud occurred, it would seem natural to have done so.  Nothing in Vondra's report leads the Court to conclude that his expert testimony will be directed at improperly assessing the credibility of in-court witness testimony, as Defendants imply.

[7]To ensure that the jury fully understands its role in evaluating expert testimony, the Court has attached to this opinion as Appendix A the proposed instruction it intends to use at trial.

Advisory Committee has noted, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." <u>Id.</u>  Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  509 U.S. 595.  Vondra appears to have derived his conclusion through a generally accepted auditing methodology, which he has applied consistently to the facts he reviewed.  As it is "it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony," the Court's inquiry into methodology must end there. <u>MicroChemical</u>, 317 F.3d at 1392.

### B. Portions of Vondra's Proffered Testimony Will Not Assist the Trier of Fact and Must Therefore Be Excluded.

Under the second prong of the <u>Daubert</u> test, this Court must assess whether Vondra's testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." <u>Daubert</u>, 509 U.S. at 591 (quoting Federal Rule of Evidence 702) (quotations omitted).  Defendants contend that Vondra's testimony cannot survive this test, as several of his opinions fall within the jury's province and/or are essentially common sense determinations for which no expert testimony is needed.

Although the Court concludes that much of Vondra's expert testimony will assist the trier of fact in understanding the evidence and determining facts in issue, the Court does agree with

Defendants that two of the opinions proffered in his initial expert report overstep the proper bounds of expert testimony. Therefore, as to those two opinions (that PurchasePro employees engaged in certain acts with the intent to deceive and that Defendants' acts misled PurchasePro auditors), Defendants' Motion to Exclude the Testimony of Albert A. Vondra is granted. With respect to all other opinions proffered by Vondra in his reports and opposed by Defendants in the referenced motion, Defendants' Motion will be denied.

**1. Vondra's Testimony Regarding General Financial Reporting Requirements and Other Similar Matters Will Assist the Trier of Fact.**

Much of Vondra's report and supplemental report contains general information relating to financial reporting requirements and other background subjects, such as the role of the independent auditor, the importance of an accounting cutoff, prerequisites for revenue recognition, the use of third-party confirmations, and the concept of materiality. Vondra Initial Report at 1-8.

Defendants object to certain portions of Vondra's report on the grounds that his conclusions are the product of common sense, and that the jury is equally capable of applying its own common sense to reach those same conclusions. Mot. at 11-13. However, in securities cases, expert testimony commonly is admitted to assist the trier of fact in understanding trading patterns, securities industry practice, securities industry regulations, and complicated

terms and concepts. <u>SEC v. U.S. Envtl., Inc.</u>, 2002 WL 31323832 at *3 (S.D.N.Y. Oct. 16, 2002); <u>see, e.g.</u>, <u>United States v. Russo</u>, 74 F.3d 1383, 1394-95 (2d Cir. 1996); <u>United States v. Cohen</u>, 518 F.2d 727, 737 (2d Cir. 1975). The Court finds that the accounting principles underlying recognition of revenue, materiality, the conduct of audits, etc., are not the type of knowledge within the "ken" of the average juror, and such testimony is unquestionably relevant to the various accounting issues at play in this case.

### 2. Vondra's Testimony Regarding Securities Industry Practice and Concepts Will Assist the Trier of Fact.

Defendants contend that Vondra's opinions regarding the completion of obligations set forth in the Statement of Work do not "require explanation by an expert, much less an accountant or auditor," and therefore should be excluded. Mot. at 11-13. Specifically, Defendants object to the admission of Vondra's opinion that work required of PurchasePro under the SOW was not complete by the end of the first quarter of 2001. Mot. at 11. The Court disagrees.

How and when to record and report revenue is a technical determination requiring knowledge of accounting principles and practices; that is, not a simple and straightforward determination that can easily be made by the average juror. An average juror may not be familiar with the technical meaning under GAAP of the terms "delivery," "collectibility," and "fixed price," nor understand how these various factors work together to yield a conclusion regarding

whether revenue should be recognized or "booked" in one quarter or another.   Indeed, the difficulty inherent in determining, for accounting purposes, when work is completed under a contract is underscored by the vigorous dispute between the SEC and Defendants on this point.   For these reasons, the Court finds that expert testimony will assist the jury in determining whether PurchasePro actually did complete work by the end of the first quarter as stated in its public filings and announcements.

While the propriety of PurchasePro's reporting of the $3.65 million ultimately will be a question for the jury, Vondra's opinion that the revenue was improperly recorded and his interpretation of the facts and circumstances that caused him to arrive at that conclusion, <u>see</u> Vondra Initial Report at 10, will assist the jury in determining whether the $3.65 million was or was not properly recorded.

Although this particular factual conclusion is associated with one of the more significant factual disputes between the parties, that does not make it off limits for expert opinion.[8]   Indeed, as the Second Circuit has observed, an expert may testify with respect

_____

[8]Defendants argue that Vondra's opinions have been impermissibly lifted directly from the statutes at issue.  That is simply not correct.  Defendants have failed to direct the Court to any specific examples of such citations.  <u>See</u> Reply at 8.  Nor has the Court found any instances in which Vondra incorporates statutory language in his opinions.  <u>See generally</u> <u>Burkhart v. Washington Metro. Area Transit Auth.</u>, 112 F.3d 1207, 1212-14 (D.C. Cir. 1997).

-14-

to factual conclusions that embrace an issue to be decided by the trier of fact, so long as he or she does not testify regarding "legal conclusions that encroach upon the court's duty to instruct on the law." U.S. v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991); see also Federal Rule of Evidence 704(a) ("testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact").  In this case, the propriety of reporting the $3.65 million is a factual conclusion that embraces an issue to be decided by the trier of fact, As such it is fertile ground for expert testimony, and is an area of expert opinion ripe for vigorous cross-examination and competing experts.

### 3. Vondra's Testimony Regarding the Intent of Various Individuals Invades the Province of the Jury.

While the Court finds the opinions proffered by Vondra generally permissible for the reasons discussed above, Defendants accurately observe that several of his opinions do invade the jury's province, specifically by making assumptions as to the intent of certain witnesses. Determinations of individuals' intent is a quintessential jury question.

For example, in his initial report Vondra opines that "PurchasePro employees, with the assistance of AOL employees . . ., prepared the SOW in order to document the existence of a fictitious arrangement with AOL and record $3,650,000 of improper revenue and cover a revenue shortfall." Vondra Initial Report at 10.  The

intent of PurchasePro employees in recording revenue and preparing documents clearly is a question for the jury, rather than for an expert. Moreover, whether PurchasePro employees prepared the SOW in order to support a fictitious arrangement and cover a revenue shortfall is a question that only the jury can answer; Vondra's opinions in this respect "undertake to tell the jury what result to reach." United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994).

In addition, Vondra opines in his report that "efforts were undertaken by both PurchasePro employees and AOL employees Tuli and Wakeford, that misled PurchasePro auditors, Arthur Andersen in connection with its first quarter review." Vondra Initial Report at 10-11. Whether PurchasePro's auditors were misled is a question that can and should be answered by PurchasePro's auditors, not by an accounting expert. Expert testimony to this effect will not assist the trier of fact in deciding any matter at issue, and therefore will be excluded under Federal Rule of Evidence 702.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Joint Motion to Exclude the Testimony of Albert A. Vondra [Dkt. No. 183] is **granted in part** and **denied in part.**

An Order will issue with this Memorandum Opinion.


November 29, 2007                    /s/_____
                                     Gladys Kessler
                                     United States District Judge


-16-

**Copies via ECF to all counsel of record**