```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

_____
SECURITIES AND EXCHANGE        )
COMM'N,                        )
                               )
        Plaintiff,             )
                               )
    v.                         )   Civil Action No. 05-36 (GK)
                               )
CHARLES JOHNSON, JR., et al.,  )
                               )
        Defendants.            )
_____)

## MEMORANDUM OPINION

Plaintiff Securities and Exchange Commission ("SEC") brings this action against four individual Defendants (John Tuli, Kent Wakeford, Christopher Benyo, and Michael Kennedy, collectively "Defendants"), alleging a fraudulent scheme to materially and improperly inflate the announced and reported revenues of PurchasePro.com, Inc. ("PurchasePro"). This matter is before the Court on Defendants' Joint Motion to Exclude the Testimony of Ward. D. Hanson. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendants' Joint Motion to Exclude the Testimony of Ward D. Hanson [Dkt. No. 182] is **denied without prejudice.**

### I.  BACKGROUND

Defendants in this case are former executive-level employees of PurchasePro, a Nevada corporation, and America Online, Inc. ("AOL"). The SEC alleges that between November 2000 and June 2001, Defendants participated in a scheme to commit securities fraud.

The alleged purpose of the scheme was to improperly inflate PurchasePro's reported revenues and to otherwise misrepresent PurchasePro's business activities for the last quarter of 2000 and the first quarter of 2001. According to the SEC, to further their scheme, Defendants back-dated sale documentation so that $3.65 million in revenue would be recognized in the fourth quarter of 2000 and the first quarter of 2001, although that revenue was not actually earned in those quarters.[1] The SEC claims that PurchasePro improperly included those back-dated transactions in revenue information announced in an April 26, 2001 national press release, an April 26, 2001 conference call, and in PurchasePro's Form 10-Q for the first quarter of 2001, filed with the SEC on May 29, 2001.

In this case, the SEC has announced its intention to include as part of its case in chief at trial opinion testimony from Ward D. Hanson, a well-published expert in Internet marketing and eCommerce with a Ph.D. and M.A. in Economics from Stanford University. Opp. at 3. Hanson wrote a textbook on Internet marketing which is used by 200 universities worldwide. Id. at 4. He is Policy Forum Director at the Stanford Institute for Economic

---

[1] The sales documentation at the heart of the SEC's case is a document known as the "Statement of Work" ("SOW"), which Defendants contend was created to reflect a portion of auction integration work PurchasePro was performing for AOL during the first quarter of 2001. Ultimately it was discovered that the SOW had been forged and backdated, a fact which both parties acknowledge.

Policy Research, and has taught various Internet marketing, eCommerce, and Economics of the Internet courses at Stanford University and the Stanford Graduate School of Business. Id. at 3.

The SEC seeks to present the expert testimony of Ward D. Hanson on: (1) issues related to the industry in which PurchasePro operated; (2) the types of contracts entered into between PurchasePro, AOL, and AuctioNet; and (3) the types of software application integration discussed in the various contracts between PurchasePro, AOL, and AuctioNet. See Hanson Report at 4. In addition, Hanson has been asked to "evaluate the capabilities expected from completion of the Statement of Work document" and to evaluate whether providing a World Wide Web link from the PurchasePro corporate web site to the AuctioNet web site satisfies the expectations created by the Statement of Work. Id. at 5.

Defendants do not contest Hanson's qualifications as an expert; rather, they contend that his opinions are premised on an unreliable methodology, are the product of an unreliable application of that methodology, and fall within the province of the jury. On October 17, 2007, Defendants jointly filed a motion to exclude Hanson's testimony.

**II.   LEGAL FRAMEWORK**

The admissibility of expert testimony is governed by the analysis set forth by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and the Federal Rules

of Evidence.  In Daubert, the Supreme Court described the trial judge's gatekeeping function and her responsibility "to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.  As our Court of Appeals has recognized, Daubert lowered the threshold for admissibility of scientific evidence, envisioning a "limited gatekeeper role" for trial judges.[2]  Ambrosini v. Labarraque, 101 F.3d 129, 134 (D.C. Cir. 1996)(quotations omitted).  In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999), the Supreme Court clarified that the trial judge's gatekeeping function applies not only to proffered expert scientific testimony, but also to "testimony based on 'technical' and 'other specialized' knowledge."  The Court emphasized that in exercising their gatekeeping function, district judges have broad discretionary authority "to determine [the] reliability [of an expert's testimony] in light of the particular facts and circumstances of the particular case." Id. at 158.

Daubert requires the trial court to undertake a two-prong analysis that centers on evidentiary reliability and relevancy. Ambrosini, 101 F.3d at 133.  The trial court must determine "first

---

[2]In 2000, Federal Rule of Evidence 702 was amended in response to Daubert and its progeny.  The Rule now provides that an expert witness with "scientific, technical, or other specialized knowledge" may testify in the form of an expert opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

whether the expert's testimony is based on 'scientific knowledge'; and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" Id. (quoting Daubert, 509 U.S. at 592).

The first prong of the Daubert analysis requires the trial court to assess the methodology employed by the expert as a means of ensuring evidentiary reliability. Id. Although Daubert identified four factors a district court may consider in assessing scientific validity, the Court emphasized that the inquiry is a "flexible one," and that the factors it discussed were not necessarily applicable in every case, dispositive, or exhaustive. Id. (citing Daubert, 509 U.S. at 593-95). Rather than mandating the mechanical application of a set list of factors, the Court cautioned in Kumho that Daubert factors "do not constitute a 'definitive checklist or test,'" 526 U.S. at 150, and that "whether Daubert's specific factors are, or are not, a reasonable measure of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." Id. at 153. The Court cautioned that in applying the first prong of the Daubert analysis, the trial court must focus "solely on principles and methodology, not on the conclusions they generate." Daubert, 509 U.S. at 595.

The second prong of the Daubert test concerns relevance or "fit," which, the Supreme Court warned, "is not always obvious, and

scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." Id. at 591. The dispositive question with respect to "fit" or relevance is whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Daubert, 509 U.S. at 591 (quoting Federal Rule of Evidence 702) (quotations omitted). As our Court of Appeals has explained, a judge is not required to become an expert in the field of the proffered expert in order to assess "fit"; rather, "once an expert has explained his or her methodology, and has withstood . . . evidence suggesting that the methodology is not derived from the scientific method, the expert's testimony, so long as it 'fits' an issue in the case, is admissible under Rule 702 for the trier of fact to weigh." Ambrosini, 101 F.3d at 134.

**III. ANALYSIS**

Defendants object to the admission of Hanson's opinions, arguing that they: (1) fall within the jury's province because they are essentially common sense for which no expert testimony is needed; and (2) are not the product of reliable principles and methods. Although Defendants' contention that Hanson's conclusions are not the product of reliable principles and methods lacks merit,[3] Hanson's opinions regarding the proper interpretation of

---

[3] Defendants argue that Hanson's testimony should be excluded because he does not describe a particular methodology through which he reaches his conclusions. Hanson's report and the conclusions

the Statement of Work present a more difficult legal issue.  As Defendants' and Plaintiff's briefs make clear, some tension exists in the applicable precedent over the extent to which an expert may testify about the proper interpretation of a contract.

Defendants object to Hanson's testimony that the work required of PurchasePro under the Statement of Work is best described in Article 5.1, rather than Article 4.1A, of the Statement of Work. Mot. at 5.  Defendants also argue for the exclusion of Hanson's conclusion that the work completed by PurchasePro by the end of March 2001 was insufficient to satisfy the Statement of Work.  Id. Defendants contend that such testimony is improper because it (1) interprets a document that is unambiguous on its face; (2) improperly opines on the legal obligations of the parties; and (3) impermissibly tells the jury what result to reach.

While Defendants are correct that Hanson should not be permitted to testify regarding the meaning of the contract as

---

therein are drawn from many years of experience in Internet marketing and eCommerce, and are derived from significant research. The studies and data upon which Hanson bases his conclusions are outlined in his report, see Hanson Report at 6-12, leaving no doubt as to the validity of the methodology leading to his conclusion that the business-to-business marketplace was highly volatile from 1999-2001. With respect to his other conclusions, Hanson's report details the resources he reviewed and how he reached his conclusions.  See Hanson Report at 13-32.  Although Hanson's analysis is not premised upon hard science, there is no question that, when relevant, testimony regarding industry custom and practice are permissible forms of testimony under Daubert, Kumho, and their progeny. See, e.g., Minebea Co., Ltd. v. Papst, No. 97-0590, 2005 U.S. Dist. LEXIS 11946, at *26 (D.D.C. Jun. 21, 2005); Iacobelli Constr. v. County of Monroe, 32 F.3d 19 (2d Cir. 1999).

between the parties, see Minebea, 2005 U.S. Dist. LEXIS 11946, at *25-26, he is permitted to testify regarding the meaning of contract terms when the meaning depends on industry practice, see Opp. at 8 (citing supporting cases from the Second, Fifth, Seventh, and Eighth Circuits).  Indeed, in Minebea, the opinion Defendants cite as support for excluding Hanson's testimony, Judge Friedman observes that expert testimony, while not permissible for the meaning of the contract as between the parties, would be useful with respect to general industry observances in negotiating, drafting, reviewing, and interpreting contracts.  Minebea, 2005 U.S. Dist. LEXIS 11946, at *26.  Therefore, although Hanson will be prohibited from addressing the specific meaning of this contract as between the parties, his testimony will be allowed in order to aid the jury in understanding the meaning of terms employed in the contract and industry practice with respect to such contracts.

The parties' papers have led the Court to believe that there will be a fuller discussion of the facts and law relevant to Hanson's opinions in the dispositive motions presently pending before the Court.[4]  The Court may well wish to revisit the merits of Defendants' motion after reading and ruling on those summary judgment motions.

---

[4] Defendants have intimated that the merits of a grant of summary judgment to certain individual defendants may rest in large part on Hanson's expert opinion.  See Mot. at 5.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Joint Motion to Exclude the Testimony of Ward D. Hanson [Dkt. No. 182] is **denied without prejudice**.

An Order will issue with this Memorandum Opinion.

```
                                      /s/
November 29, 2007            Gladys Kessler
                             United States District Judge
```

**Copies via ECF to all counsel of record**