UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 05-36 |
| CHARLES JOHNSON, *et al.*, | : |
| Defendants. | : |

**MEMORANDUM OPINION**

Defendants Wakeford, Tuli, and Kennedy have filed Motions to exclude the testimony of R. Geoffrey Layne, James Sholeff, and Jeffrey Anderson. Defendant Benyo has joined in these Motions. Plaintiff SEC has moved for a Protective Order and to quash the deposition of Jeffrey Anderson. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, the Court concludes, for the following reasons, that the Motions should be **denied**.

I. FACTUAL BACKGROUND

The SEC alleges that between November 2000 and June 2001, Defendants participated in a scheme to commit securities fraud to improperly inflate PurchasePro's reported revenues and to otherwise misrepresent PurchasePro's business activities for the last quarter of 2000 and first quarter of 2001. The Government brought both criminal and civil cases against the Defendants. This civil case was stayed from November 9, 2005 until March 13, 2007, during which Defendants Wakeford, Tuli, and Benyo were tried and acquitted in the Federal District Court for the Eastern District of Virginia. The charges against Defendant Kennedy were dismissed. A mistrial was declared as to

the fifth Defendant, Charles Johnson, Jr. His retrial began October 9, 2007, and is continuing at this very time.

Upon completion of the criminal cases of the four Defendants (Wakeford, Tuli, Kennedy and Benyo), the stay in this civil case was lifted as to them (but not as to Defendant Johnson, Jr.). After their acquittals, the four Defendants were extremely anxious to schedule an early trial in this case in the hope that they would be able clear their names completely and resume normal lives. For that reason, and because of the age of the case, on May 7, 2007, this Court entered a Scheduling Order with very short deadlines. On July 13, 2007, at the request of the SEC, and over the objection of the Defendants, the Court extended discovery for one month until August 30, 2007. Numerous depositions were held during the discovery period, and counsel on all sides worked diligently to complete discovery during that period.

All parties agree that the testimony of the three people who are the subject of the pending Motions (Layne, Sholeff, and Anderson) is very significant. According to the SEC, its case would be "crippled" without the testimony of these individuals because they have "very important knowledge of the facts." SEC Opp. at 25. The SEC has listed all three on its official Witness List filed November 28, 2007. Defendants do not deny or challenge these assertions by the SEC and they, too, have listed all three on their Witness Lists.

Layne, Sholeff, and Anderson (the "Witnesses") are former PurchasePro executives. Each of them pled guilty to specific factual charges and testified at the Benyo criminal trial in late 2006. Layne pled guilty to securities fraud and was sentenced to 57 months incarceration. Pursuant to his plea agreement, his sentence was reduced and discharged after he testified in the Grand Jury and at the criminal trial of Defendants. Sholeff pled guilty to perjury and was sentenced to 15 months

incarceration. Because of his cooperation and testimony, his sentence was reduced to four months incarceration and four months home confinement.

The plea agreements of the three Witnesses required them to testify in future proceedings and provided broad protections to them from further prosecution. The three Witnesses also have cooperation agreements with the SEC requiring them to testify, at the request of the SEC, in this case both at trial and by deposition.

On July 31, 2007, Defendant Tuli noticed a deposition for Layne on August 8, 2007 and for Sholeff on August 27, 2007. On August 28, 2007, two days before the close of discovery, Defendant Wakeford noticed a telephonic deposition for Anderson on August 30, 2007. At the depositions of all three Witnesses, each of them asserted their Fifth Amendment rights. Consequently, the depositions were extremely short and of little or no value to Defendants.

Defendants now argue strenuously that the trial testimony of these three Witnesses should be excluded because of the SEC's "intentional delay in seeking immunity [for the Witnesses] (and not enforcing their cooperation agreements)" and its intentional shielding of them "from providing substantive deposition testimony for months" until after discovery had closed and they had provided their testimony in the current criminal trial against PurchasePro CEO Charles Johnson, Jr. Tuli Mot. to Exclude at 2, 1.

## II.   LEGAL ANALYSIS

### A.   Defendants' Motions to Exclude

In the seminal case of <u>Securities & Exchange Commission v. Graystone Nash, Inc.</u>, the Third Circuit discussed in a thoughtful and much-cited opinion the very issues presented in these Motions, namely, whether to preclude evidence in civil cases where witnesses had relied on their Fifth

Amendment privilege against self-incrimination during discovery. SEC v. Graystone Nash, Inc., 25 F.3d 187 (3d Cir. 1994). The Third Circuit briefly summarized the case law and explained that:

> The privilege against self-incrimination may be raised in civil as well as in criminal proceedings and applies not only at trial, but during the discovery process as well. Unlike the rule in criminal cases, however, reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810, 821 (1976). Use of the privilege in a civil case may, therefore, carry some disadvantages for the party who seeks its protections.

25 F.3d at 190.

The Graystone court acknowledged that

invocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a course of information that might conceivably be determinative in a search for the truth. Moreover, because the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation is apparent.

In balancing these competing considerations, the Court recognized that "invocation of the privilege may be proper, but it does not take place in a vacuum; the rights of the other litigant are entitled to consideration as well." Id. at 191. The Court emphasized that "the effects that an invocation of privilege against self-incrimination will have in a civil suit depends to a large extent on the circumstances of the particular litigation." Id. at 192. In sum, "a trial court must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment." Id.

Taking into account the admonitions of the Graystone court, this Court will now set forth the considerations upon which it has relied in reaching the conclusions that Defendants' Motions to Exclude should be denied.

1.	The Court is convinced that Defendants will not suffer substantial prejudice if their Motions are denied. A number of reasons exist for reaching this conclusion. The same counsel who represent Defendants in this civil case represented them in the criminal trials in which they were acquitted. Thus, they are totally familiar with the substance of the Witnesses' extensive six days of testimony in those trials. In addition, Defendants Benyo, Tuli, and Wakeford extensively cross-examined the three Witnesses at the 2006 Benyo trial, which involved the same transactions at issue in this case. While it is true that Defendant Kennedy was not a defendant in the Benyo trial, and therefore his counsel may not have attended it, the three Witnesses offered little testimony about him in that trial.

In addition to the lengthy testimony from the Benyo criminal trial, the Defendants have also had an enormous amount of information at their disposal about the involvement of the three Witnesses in the events in question in this case. For example, they have the FBI Forms 302 documenting nine interviews with the three Witnesses. The Forms 302 consist of almost 100 single-spaced pages documenting, albeit not word-for-word, what the Witnesses said in those interviews.

Defendants also now have the very recent October 2007 testimony the three Witnesses gave in the criminal retrial of Charles Johnson, Jr. in the Eastern District of Virginia.[1]

---

[1]	Since the three Witnesses testified in both the Benyo trial and the Johnson trial, Defendants should have access to their Grand Jury testimony, if any exists. That is testimony to which the SEC has not been given access.

Finally, the Defendants have the trial testimony of Anderson[2] in the December 2000 trial of United States v. Wiegand,[3] as well as the SEC's investigative testimony Layne and Sholeff gave back in February 2002.

Given this extraordinary amount of material, it is hard to believe that Defendants will suffer any serious prejudice from having lost a few additional hours of deposition time with the Witnesses.

2. This conclusion is strengthened by the fact that none of the Defendants accepted the earlier suggestion of the SEC that the Defendants depose Layne and Sholeff once they have finally received their grant of immunity from the Department of Justice. If Defendants were so anxious to obtain truly essential <u>new</u> information from the Witnesses, they would not have rejected the SEC's suggestion.[4]

3. Defendants offer many reasons as to why they did not notice the depositions of Layne, Sholeff, and Anderson until July 31, August 8, and August 28, 2007, respectively. As noted earlier, the Court is well aware of how busy all counsel were during the discovery period. Be that as it may, the fact remains that Defendants waited until one month before the close of discovery to notice Layne and Sholeff's depositions, and waited until two days before the close of discovery to notice Anderson's deposition. What is more, Defendants had reason to believe from conversations with the Witnesses' counsel, that these Witnesses were going to assert their Fifth Amendment rights.

---

[2] The SEC takes a different position as to Anderson, and the Court will address that, *infra*.

[3] Wiegand, PurchasePro's General Counsel, was acquitted in a bench trial.

[4] It should be noted that the lengthy briefing on summary judgment motions has been completed and that slightly more than two months remain before trial. While Defendants are undoubtedly busy preparing for trial, the onerous job of writing dispositive motions has been concluded, leaving them more than sufficient time to take these depositions, if they so desired.

Therefore, if the Witnesses' depositions were sufficiently important to Defendants, it was incumbent on them to have noticed the depositions at a much earlier time, so that the Witnesses could invoke their rights, and the Defendants could then make appropriate and timely motions well before the close of discovery. Instead, they chose not to file any motions to compel the testimony of the Witnesses or to overrule their Fifth Amendment claims until well after the close of discovery.

4.  Preclusion of witness testimony is an extremely strong sanction and disfavored in our Circuit. As our Court of Appeals noted in Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996), preclusion may, in certain circumstances, "approach . . . a default judgment in its severity." Because our judicial system "favors the disposition of cases on the merits," preclusion, especially in the context of litigation-ending sanctions, "is a sanction of last resort to be applied only after less dire alternatives have been explored without success or would obviously prove futile." Id. In this case, the SEC has maintained that these Witnesses "have irreplaceable knowledge about the case, because they had conversations and communications that go to the heart of many of the allegations." Opp. at 25. While the SEC does not go so far as to maintain that preclusion of these Witnesses would amount to a default judgment *per se*,[5] it clearly believes that it will be "irreparably prejudiced" by the relief sought by Defendants. Id.

---

[5] It is true that Bonds presents a more extreme set of circumstances than does the present case. In Bonds, the District Court imposed as a discovery sanction under Fed. R. Civ. P. 37(b)(2)(B), an order prohibiting the defendant from offering any fact witnesses at trial. Consequently, the Court of Appeals viewed that preclusion order as tantamount to a default judgment. Bonds, 93 F.3d 803, 808. While Defendants are not requesting such an extreme sanction in this case, the Court of Appeals' opinion in Bonds makes clear its view that because cases should be decided on the merits, witness preclusion is disfavored and should only be adopted as a last resort after other less onerous alternatives have been considered.

In sum, the significant prejudice which Plaintiff would suffer from a preclusion order against these three Witnesses combined with the strong presumption in favor of disposition of cases on the evidentiary merits further supports denial of the Motion.

For all of the reasons stated above, the Court concludes that the Defendants' Motions to Exclude the testimony of these three Witnesses must be **denied**.

### B.     The Conduct of the SEC

Despite having concluded, after balancing the considerations discussed above, that the Motions should be denied, the Court finds it necessary to address the extremely questionable manner in which the SEC conducted itself regarding the handling of these Witnesses and the assertion of their Fifth Amendment rights.

The Witnesses all had plea agreements with the Department of Justice in their criminal cases which afforded them broad protection from further prosecution. In addition, they all had agreements to cooperate with and testify for the SEC, at either trial or depositions. In short, these Witnesses were fully protected from further criminal prosecution and had agreed to fully cooperate with the SEC at subsequent trials or depositions.

What is particularly disturbing is the Defendants' allegations that the SEC "intentionally shielded [these Witnesses] from providing substantive deposition testimony for months -- until all discovery had been closed and Defendants' summary judgment pleadings had been filed -- to protect those Witnesses from Defendants' scrutiny prior to their giving testimony in the current criminal action against former PurchasePro CEO Charles Johnson, Jr." Tuli's Mot. at 1.

There appears to be substantial support for this allegation. The SEC failed to insist that the Witnesses honor their cooperation agreements[6] and, instead, told Defendants' counsel on August 6, 2007, that it would seek immunity for those Witnesses from the Department of Justice. The Department of Justice, which brought the criminal cases in the Eastern District of Virginia, was a party to the plea agreements with the Witnesses, and was granted Intervenor status in this case, at no time initiated any effort to offer immunity to the Witnesses during the extended discovery period which lasted until August 30, 2007.

More significantly, the Defendants allege that the SEC intentionally delayed seeking immunity for these Witnesses for a period of almost two months. On August 6, 2007, the SEC informed Defendants' counsel that "it <u>will seek</u> . . . appropriate immunity" for Layne. Exh. 4 to Tuli's Reply (emphasis added). It was only at the Status Conference on September 24, 2007 that the SEC revealed for the first time that it had done nothing between August 6 and September 24, 2007 to initiate obtaining the appropriate immunity from the Department of Justice. At that point, the Court ordered that the immunity motions be filed no later than October 10.

---

[6] The SEC claims that it did not try to enforce compliance with its own settlement agreements with the three Witnesses because there was some question as to whether those agreements expressly required the Witnesses to provide such testimony, if it was the Defendants, rather than the SEC, seeking it either in deposition or at trial. The settlement agreements in question are the standard settlement agreements which the SEC has been using with cooperating defendants for many years. It strains credulity to believe that the SEC had never been faced with these questions of interpretation of its settlement agreements before, and that it reached the conclusion that its own agreements did not provide for full cooperation by these Witnesses.

Even if such ambiguity existed in the cooperation agreements with Layne and Sholeff, the SEC does not deny that it never tried to enforce those agreements. It never requested Layne or Sholeff to honor their agreements to testify. Nor did it threaten revocation of its agreements if they failed to testify. Sholeff himself conceded during his deposition that if the SEC had asked him to testify, he would not invoke his Fifth Amendment rights. Tuli's Mot. at 6.

The SEC vigorously denies knowing that the Witnesses would exercise their constitutional rights under the Fifth Amendment until their individual counsel advised the Commission of the Witnesses' intention to do so shortly before the scheduled dates of the depositions of Layne, Sholeff and Anderson on August 8, August 27, and August 30, respectively. The SEC's position is, at best, disingenuous.

Defendants maintain that the SEC knew as early as May and no later than August 1 that Layne would invoke his Fifth Amendment privilege and refuse to testify.[7] Thereafter, it took the SEC approximately 10 weeks to obtain immunity for him from Intervenor Department of Justice. Despite the bureaucratic hoops which the SEC claims it had to jump through at the Department of Justice, it is very hard to believe that it could not have obtained immunity much faster. Layne already had immunity from the Department of Justice in his criminal case and could not be federally prosecuted under the plea agreement he had reached. What is more, it took only five weeks for the SEC to obtain immunity from the Department of Justice for Sholeff, and it took only four weeks for Anderson's private counsel, who presumably does not have the same clout with the Department of Justice as the SEC has, to obtain immunity from DOJ for Anderson.

Finally, the decision of the Intervenor Department of Justice to file its immunity applications on October 10, 2007, as a separate, but "related" "miscellaneous matter" in this Court and to fail to notify Defendants of these filings can hardly be deemed a model of transparency. The Defendants

---

[7] Indeed, there is reason to believe that the SEC knew as early as March of 2005, when the SEC sought a Protective Order, that certain witnesses would assert their Fifth Amendment rights. DOJ warned the Court on March 11, 2005 that the witnesses might "assert their Fifth Amendment privileges if compelled to testify." DOJ Reply Br. in Support of Mot. to Intervene and for Temporary Stay at 5. There is no question that the SEC told this Court on May 25, 2007, that it was aware that some of its witnesses would be relying on the Fifth Amendment.

did not learn of the filing of the immunity applications for approximately one week, and that was only because of Court intervention on October 16, 2007. As an Intervenor in the present litigation, the Department of Justice was well aware of Defendants' interest in these grants of immunity, and of the tight deadlines under which all parties were operating. Had DOJ filed the Motions to Compel Testimony in this case, the Defendants would have been immediately notified instead of learning about them on October 16, 2007. The present Motions to Exclude were filed three days later, on October 19, 2007.

Significantly, between October 10, 2007 and October 16, 2007, all three Witnesses were able to begin and complete their testimony in the Johnson criminal retrial.

It is clear from this convoluted record that the SEC made no serious effort to enforce its cooperation agreements and intentionally delayed seeking immunity for almost two months for Layne and for five weeks for Sholeff. The SEC did not intensify its efforts to obtain immunity until ordered to do so by the Court at the September 24, 2007 Status Conference.

The observations of Judge Charles R. Breyer in Securities & Exchange Commission v. Reyes, 2007 WL 420115, *5 n. 3 (N.D. Cal. February 6, 2007), are directly applicable to the facts of this case:

> The Court is unimpressed with the SEC's argument that it is a hapless bystander and that all authority regarding use immunity rests with the DOJ. While this may be literally true, *see* 18 U.S.C. §§ 6002, 6003, a government agency working in partnership with the DOJ enjoys obvious benefits from its shared purpose with the Attorney General. Where, as here, that shared purpose provides the SEC with access to information unavailable to its civil adversaries, the Court concludes that the SEC must choose between enforcing its unique privileges and allowing the witnesses to enforce theirs.

In sum, this record demonstrates that neither the SEC, nor DOJ, dealt straightforwardly, candidly, and in good faith with Defendants. Both agencies had good reason to believe there would be Fifth Amendment problems with the Witnesses. Both agencies had adequate remedies at their disposal for overcoming those problems. Both agencies deliberately ignored the problems and delayed taking action until the discovery period ended and the Witnesses had safely testified at the Johnson retrial.

Such conduct is hardly worthy of institutions ostensibly dedicated to upholding the public interest and the administration of justice.

### C.  Plaintiff's Motion for Protective Order and to Quash Deposition of Jeff Anderson

Plaintiff SEC has moved for a Protective Order quashing the deposition of Jeff Anderson, and ruling that his invocation of the Fifth Amendment at his deposition should not prevent him from testifying at trial. The SEC argues that the serving of a deposition subpoena on August 28, 2007 for a deposition to be held on August 30, 2007, constitutes unreasonable notice under Fed. R. Civ. P. 30(b).

In light of the rejection by Defendants Wakeford and Kennedy of the SEC's offer to resume depositions of the now-immunized three Witnesses and the failure of Defendants Benyo and Tuli to respond to that offer, this Motion will be **denied as moot**.


December 5, 2007                                    /s/
                                                    Gladys Kessler
                                                    United States District Judge


**Copies via ECF to all counsel of record**