# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SECURITIES & EXCHANGE                  :
COMMISSION,                            :
                                       :
       Plaintiff,       :
                                       :
    v.                   :      **Civil Action No. 05-36 (GK)**
                                       :
CHARLES JOHNSON, JR., *et al.*,        :
                                       :
       Defendants.      :

## AMENDED MEMORANDUM OPINION

On January 16, 2009, Plaintiff Securities & Exchange Commission ("SEC") filed a Motion for Summary Judgment against Defendant Charles Johnson, Jr. ("Johnson"). Johnson had been represented by Nicholas I. Porritt and others, of Wilson Sonsini Goodrich & Rosati, P.C. ("WSGR"). On February 24, 2009, the Court granted WSGR's unopposed Motion to Withdraw as Johnson's attorneys. No counsel ever entered an appearance thereafter on behalf of Johnson, and the Court has proceeded on the assumption that he is acting *pro se*. The Court is well aware that Johnson was convicted in a criminal trial and is now imprisoned serving his sentence on those charges.

On May 19, 2009, the Court issued an Order, pursuant to Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1980), informing Johnson of the consequences of failing to respond to a dispositive motion such as the pending Motion for Summary Judgment. In particular, the Court informed Johnson that under Local Civil Rule 7(b), the Court may treat the Motion as conceded if the opposing party does not respond to it within 11 days of the date of service. In the Order of May 19, 2009, the Court required Johnson to respond to Plaintiff's Motion by July 15, 2009, and said specifically that "[i]f Defendant does not respond by that date, the Court will treat the Motion as

conceded and, if the circumstances warrant, grant the relief sought." Johnson has failed to file any response to Plaintiff's Motion for Summary Judgment.

Johnson's first criminal trial began in October 2006. During that trial, Johnson tried, unsuccessfully, to have his defense attorney use a false document that Johnson had manufactured. The attorney, who was in no way responsible for the creation of that document, then withdrew and Johnson was severed from the other three defendants in the trial.[1] Johnson was then tried in a bench trial before Judge Walter D. Kelley, Jr. in October 2007. Johnson was represented by counsel throughout that trial, which lasted more than 10 days. He was found guilty of securities fraud, conspiracy to commit securities fraud, witness tampering, and obstruction of justice. On November 14, 2008, Judge Kelley sentenced Johnson to 108 months in prison and ordered him to pay restitution of $9.6 million.

This civil case was stayed as to Johnson because of the pending criminal proceeding in the United States District Court for the Eastern District of Virginia. It was ultimately tried by this Court against three Defendants in March 2008: Benyo, Wakeford, and Michael Kennedy. Those charges involved the same basic nucleus of facts upon which this Motion for Summary Judgment depends. Consequently, the Court is very familiar with the facts surrounding the transactions and conduct upon which the SEC bases its claims of civil liability.

The jury in this case found Benyo liable on one count of aiding and abetting securities fraud, and found Wakeford and Michael Kennedy not liable on any of the civil charges. The SEC later agreed to dismiss the civil charges against Defendant Tuli.

---

[1]    The 2006 trial proceeded as to the other Defendants: Christopher Benyo, Kent Wakeford, and John Tuli. All three were acquitted of all charges.

The Court has considered the lengthy and detailed Motion for Summary Judgment filed by the SEC, the comprehensive and detailed opinion by Judge Kelley establishing Johnson's guilt for all the criminal acts asserted against him, this Court's own knowledge of the evidence presented in the civil trial held in March 2008, and the applicable case law, and concludes that the Motion for Summary Judgment should be **granted** for the following reasons.

1.      Under LCvR 7(b), the Court has the authority to grant such dispositive motions when no opposition has been filed.  No opposition has been filed and there is no reason not to exercise such authority in this case.

2.      Given the fact that Johnson has been criminally convicted and sentenced on charges which arise out of the transactions and conduct that support the SEC's civil complaint in this case, and which were credited by all fact finders in both the criminal and civil cases, Johnson is estopped under the doctrine of collateral estoppel from denying the facts at issue that were litigated in the criminal and civil cases. SEC v. Belzerian, 29 F.3d 689, 693 (D.C. Cir. 1994), citing Parkland Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5 (1979); SEC v. Gruenberg, 989 F.2d 977, 978 (8th Cir. 1993); SEC v. Freeman, 290 F. Supp.2d 401, 405 (S.D.N.Y. 2003).  Consequently, the Court concludes that there is no genuine issue of material fact and that the SEC is entitled to summary judgment as a matter of law pursuant to Fed. R. Civ. P. 56.

3.      The SEC has requested a number of different remedies which should be granted in order to protect the public from further violation of the applicable securities laws.

a.      Based on the conduct of which Johnson has been convicted, the SEC's request to permanently enjoin him from committing future violations of the applicable securities laws is more than justified.  Under SEC v. Savoy Indus., Inc., 587 F.2d 1149, 1168 (D.C. Cir. 1978), the

SEC has met the ultimate test of whether the Defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.

In the present case, the illegal conduct stopped only because PurchasePro and the auditors at Arthur Andersen eventually discovered that revenues were being improperly claimed from certain transactions, such as the one with AuctioNet.  That violation of the securities laws was by no means an isolated incident.  Johnson committed numerous violations over many months in the first half of 2001.  He has never demonstrated any recognition of the wrongfulness of his conduct, and in fact has obstructed justice by manufacturing documents in his first criminal trial and leading his employees to destroy documents and lie to investigators.  Finally, Johnson may well have opportunities to violate the law after his release from prison.  He will be approximately 55-56 years old when he is released, an age at which it is certainly possible for him to be involved in other business ventures.

b.    The SEC also requests that the Court enjoin Johnson from serving as an officer or director of a publicly-held company.  Again, the facts established in this case demonstrate the appropriateness of this remedy.  Johnson's actions involved repeated efforts to deceive investors in PurchasePro and the investing public at large.  These actions, including directions to subordinates to forge signatures and falsify documents, are flagrant and serious.  Johnson, as the highest executive at PurchasePro, developed the fraudulent schemes and then directed his subordinates to carry them out.  He had a large financial stake in this fraud, given that he had pledged his own PurchasePro stock in order to obtain a $100 million line of credit; his fraudulent activities were designed, in part, to avoid having that line of credit terminated or restricted.  All of these factors support imposition of a life-time bar on serving as an officer or director of publicly-held companies.

c       Civil monetary penalties are authorized for violations of the Securities Exchange Act of 1934 under § 21(d)(3)(A).  Section 20(d) of the Securities Act of 1933, 15 U.S.C. § 77t(d), contains analogous provisions for violations of that statute.  Johnson's fraudulent activities and obstruction of justice were so flagrant and so serious that measures to achieve maximum deterrence are appropriate.

Section 21(d)(3)(B) of the Exchange Act contains a three-tier range of penalty amounts that may be imposed and provides that the penalty cannot exceed the greater of "the gross amount of [the Defendant's] pecuniary gain" that resulted from the statutory violation.  While the statute also allows imposition of amounts listed for each of the specific tiers, one appropriate method of determining the amount of the penalty is to set the Defendant's pecuniary gain as the outside limit.  Here Johnson obtained a pecuniary gain of at least $3 million as a result of his illegal activities.[2]  Therefore, it is perfectly appropriate to impose a civil penalty of $3 million.

For all these reasons, it is hereby

**ORDERED**, that Plaintiff's Motion for Summary Judgment should be **granted**.  An order will accompany this Memorandum Opinion.

September 11, 2009                       _/s/_____
                                        Gladys Kessler
                                        United States District Judge

**Copies via ECF to all counsel of record**

_____

[2]      In April 2001, PurchasePro's directors decided to pay Johnson a bonus of $2 million and to reimburse him for $1 million in expenses.  Judge Kelley specifically found that "[t]he Board would not have authorized the $3 million payment to [Johnson] but for management's assurances that PurchasePro had met its Q1 Earnings guidance."  Thus, it is clear that it was Johnson's fraudulent efforts to artificially inflate PurchasePro's earnings that enabled him to seek and obtain the $3 million from the Board.